[No. 3806.]

# WILLIAM T. COLEMAN *v.* THE BOARD OF SUPER-VISORS OF THE COUNTY OF MARIN.

SUBSIDY TO A RAILROAD BY A COUNTY.—A board of supervisors may call a special meeting for the purpose of calling an election to vote on the question of issuing the bonds of the county to a railroad company, to aid in the construction of a railroad, under the act of April 4, 1870, commonly known as the five per cent. act.

IDEM.—Aid under said act may be voted and granted to a railroad company which is organized for and proposes to build a railroad between certain points, even if not incorporated until after the order has been made calling the election.

IDEM.—Under said act, after a company has proposed to build a road upon a certain route, and the question has been submitted to the electors and they have voted to grant aid, and the board of supervisors has accepted the proposition and resolved to. extend the aid, it may authorize the railroad company to diverge from the proposed line of road in part.

THE Supreme Court, on the petition of William T. Coleman, who was a taxpayer at San Rafael, Marin County, issued a writ of review to the board of supervisors of said county, to enable it to review the proceedings of the board in relation to a subsidy in county bonds, granted to the North Pacific Coast Railroad Company, under the act of April 4, 1870. Said act (Statutes 1869–70, p. 746) provided that the several counties might extend aid in county bonds for the construction of railroads, provided the whole amount of bonds issued did not exceed five per cent. of the assessed value of property in the county. Before granting such aid, the board was required to submit to the qualified electors of the county, at an election to be called at least thirty days after notice given, the question whether such railroad aid should be granted. The aid was not to be granted unless a majority of the electors voting cast their votes in favor of the aid. On the 6th of December, 1871, the supervisors of Marin County signed an order calling a special meeting of the board, to be held on the 12th day of December, 1871, "at one o'clock P. M., for the purpose of considering a petition of the citizens of said county in reference to a railroad, and for the purpose of calling an election in and for said county, at which shall be submitted to the

qualified electors of said county the question whether certain aid shall be granted by said county for the purpose of constructing a railroad in said county, to be located between San Rafael and Tomales."

At the special meeting held December 12, the board called an election to be held January 29, 1872, to vote on the question, "Shall aid to the extent of issuing bonds of said county to the amount of one hundred and sixty thousand dollars ($160,000), payable twenty years after the date of their issue, and bearing interest at the rate of seven per cent. per annum, be granted by said county to such railroad company as shall offer the best and most favorable terms to the board of supervisors of said county, considered with reference to the most substantial, safe and convenient railroad, with its rolling-stock complete (the said board reserving the right to reject any and all offers), for the construction of a railroad in said Marin County along the following route: Commencing at a point on the east side of B street, in the village of San Rafael in said county; running thence westerly, following the general direction of the public road leading from San Rafael to Olema, as far westerly as the most westerly bridge on said road crossing the Paper Mill Creek; thence along the said creek to its junction with Nicasio Creek; thence through said county to the village of Tomales in said Marin County."

At the election, a majority of the electors voted in favor of the proposed aid. The North Pacific Coast Railroad Company, which had been incorporated December 19, 1871, sent to the board an offer to construct a railroad between the two points for the subsidy. Its proposition was in part as follows:

" And it hereby offers to construct a substantial, safe and convenient railroad, with its rolling-stock complete, in said Marin County, along the following route: Commencing at a point on the east side of B street, in the village of San Rafael in said county; running thence westerly, following the general direction of the public road leading from San Rafael to Olema as far westerly as the most westerly bridge on said road crossing the Paper Mill Creek; thence along

said creek to its junction with Nicasio Creek; thence through said county to the village of Tomales, in said Marin County."

On the 6th of February, 1872, the board took the proposition into consideration, and accepted of the same with the provisos, that the bonds be issued as fast as the road was completed, at the rate of four thousand dollars per mile, and that the company should so construct its road as to enter the village of San Rafael from the south through the ridge lying to the south of said village, at some point therein east of the west line of E street, considered as extended southerly to said ridge, and so as that the road to and through San Rafael should form a portion of its main trunk road.

San Rafael does not lie on the direct route from Saucelito to Tomales, but to the east of the direct route. The company afterwards petitioned the board to be released from their contract to run their main line through San Rafael, as required in the proviso, and to be permitted to enter San Rafael at a different point by a branch while the main track passed to the west of San Rafael. The board granted the petition. Coleman in his petition avers that the board exceeded its jurisdiction in calling a special meeting, and in granting the petition for a change of route, and in calling an election to vote aid to a company that had no railroad already built.

*McAllisters & Bergin,* for the Petitioner.

The special meeting of the board of supervisors was not lawfully convened. The statute provides that: "If at any time after the final adjournment of a regular meeting, the business of the county shall require a meeting of the board, a special meeting of the same may be ordered by a majority of the board. * * * The order shall specify the business to be performed, and no other shall be transacted at such special meeting." (2 Hittell, Sec. 6974.)

Voting subsidies, or convening meetings to vote subsidies, is not "the business of the county."

The order calling the special meeting does not "specify the business" to be performed.

At the time of these proceedings there was no railroad in existence. The statute only authorized the board to aid in the construction of railroads, and, therefore, the proceedings are void. The order of December 6, 1871, declares the purpose of the meeting to be to grant certain aid for the purpose of constructing a railroad in said county, "to be located between San Rafael and Tomales."

The board had no power to change the line of the railroad. (*People* v. *Supervisors of Schenectady*, 35 Barb. 415; *Moore* v. *Williams*, 33 Id. 476; *Jermaine* v. *Waggener*, 1 Hill, 284; *Rogers* v. *Runyan*, 9 How. Pr. 248.)

*S. M. Wilson, J. T. Boya, and W. W. Crane, Jr.*, for the Board of Supervisors.

By the COURT:

We are of opinion that the board did not exceed its jurisdiction in any of its proceedings set forth in the petition, and that it has regularly pursued its authority therein.

Writ dismissed.

Mr. Justice RHODES dissented.